# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK JACKSON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 07-CV-0692-MJR |
| v. | ) |
| | ) |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction and Background

Plaintiff Mark Jackson worked for the Illinois Department of Human Services (IDHS) at the Clyde H. Choate Mental Health and Development Center (Choate) for nearly ten years. During the majority of his employment, Jackson was a Mental Health Tech III in the developmentally disabled division. He held that position until he was promoted to a Mental Health Program Tech III. During that time, Jackson became acquainted with T.L, a patient at Choate. T.L. attended all of Jackson's group therapy sessions and became close with him. After her release on July 3, 2006, T.L. and Jackson remained in frequent contact.

In January 2007, however, T.L. was scheduled to be readmitted to Choate, at which time T.L.'s mother expressed concern about the nature of their relationship. This prompted the Office of the Inspector Genreral (OIG) to investigate whether Jackson had engaged in any inappropriate conduct with T.L., including sexual abuse. Rick Tweedy, an OIG investigator, questioned both T.L and Jackson about their relationship. During the course of the investigation,

T.L. admitted that Jackson had kissed her while she was still a patient at Choate (Doc. 24, Exh. G, Tweedy Depo. at 15-17). Jackson not only denied this, but also claimed that he had no contact with T.L. after her discharge. Review of the T.L.'s cell phone records, however, showed that at least 198 calls were made between T.L. and Jackson during the relevant period (Doc. 24, Exh. H1, OIG Investigative Report 3007-023). Jackson now admits that he lied to the investigator about calling T.L. (Doc. 24, Exh. A, Jackson Depo. at 57).

Ultimately, Tweedy found that while there was no evidence of sexual abuse by Jackson, there was an indication that he kissed T.L. while she was still a patient and that he had lied to investigators about their relationship (Doc. 24, Exh. H, OIG Investigative Report 3007-023). Based on these findings and his own admission, Jackson was suspended on May 21, 2007. On June 20, 2007, Jackson was terminated due to a finding that he engaged in conduct unbecoming a state employee and that he obstructed an OIG investigation by lying.

On October 12, 2007, Jackson filed this action against three defendants: IDHS, Carol Adams, the secretary of IDHS, and Cindy Flamm, the administrator of Choate (Doc. 2). In his complaint, Jackson raised five claims: sex discrimination in violation of Title VII (Count 1), violation of the American with Disabilities Act (ADA) (Count 2), violations of his First Amendment rights (Counts 3 & 4), and retaliatory discharge (Count 5). On December 18, 2008, however, Jackson voluntarily moved to dismiss the claims against Defendants Adams and Flamm (Counts 3 & 4), leaving IDHS as the sole remaining defendant in this action.

On December 19, 2008, Defendant IDHS moved for summary judgment as to the remaining counts (Doc. 23). Having fully considered the parties' arguments and the evidence in the record, this Court now **GRANTS** IDHS's motion for summary judgment.

## B. Standards Governing Motions for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986)**. **FEDERAL RULE OF CIVIL PROCEDURE 56(a)** provides:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact that the movant is entitled to as a matter of law.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. *Oest v. IDOC*, **240 F.3d 605, 610 (7th Cir. 2001)**; *Moore v. J.B. Hunt Transport, Inc.*, **221 F.3d 944, 950 (7th Cir. 2000).** The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

The burden is on the non-moving party to produce specific facts that show a genuine issue for trial. **FED.R.CIV.P. 56(e);** *Moore*, **221 F.3d at 950.** "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. North American Van Lines, Inc.*, **121 F.3d 1066**, **1071 (7th Cir. 1997);** *see also* **FED.R.CIV.P. 56(e) ("an opposing party may not rely merely on allegations or denials in its own pleading")**.

In ruling on a summary judgment motion, this Court must construe the evidence and all inferences reasonably drawn therefrom in the light most favorable to the non-moving party. *Anderson*, **477 U.S. at 255.** Thus, the undersigned District Judge construes all facts and makes all reasonable inferences in favor of Jackson in ruling on the instant motion.

## C. Analysis

### 1. Jackson's Title VII Sex Discrimination Claim (Count 1)

Under **42 U.S.C. §2000e-2(a)(1)**, it is unlawful to discharge any individual because of their race, color, religion, sex, or national origin. To proceed under Title VII, a plaintiff must either (a) provide direct or circumstantial evidence of an employer's discriminatory intent or (b) show disparate treatment using the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-04 (1973)**.

The direct method requires a plaintiff to show, either through direct or circumstantial evidence, that his employer discriminated against him based on his sex. *Rhodes v. Illinois Dep't of Transp.*, **359 F.3d 498, 504 (7th Cir. 2004)**. Such evidence proves discriminatory conduct "without reliance on inference or presumption." *Id*. Because Jackson has not produced any direct evidence of intentional discrimination, this Court's analysis proceeds under the indirect method.

Under the indirect method, a plaintiff must first establish a prima facie case for sex discrimination by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff preformed the job according to defendant's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, **510 F.3d 681, 687 (7th Cir. 2007)**.

In reverse sex discrimination cases, however, a male plaintiff has an even heavier burden, since it is unusual for an employer to discriminate against an employee who is a member of the majority. *Gore v. Indiana Univ.*, **416 F.3d 590, 592 (7th Cir. 2005)**; *Katerinos v. U.S. Dep't of Treasury*, **368 F.3d 733, 736 (7th Cir. 2004)**. Instead of simply showing that he is male, a

plaintiff must demonstrate that the employer has a "'reason or inclination to discriminate invidiously against [men]' or evidence that 'there is something "fishy" about the facts at hand.'" **Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003) (quoting Mills v. Healthcare Serv. Corp., 171 F.3d 450, 455 (1999)).**

In disparate punishment claims, "the second and fourth prongs of *McDonnell Douglas* merge." **Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 592 (7th Cir. 2008) (citing Lucas v. Chicago Transit Auth., 367 F.3d 714, 728 (7th Cir. 2004))**. In such cases, the plaintiff must establish that he received a harsher punishment or a disparate punishment than other similarly situated female employees. *Id*. The Court considers the employee's "performance, qualifications and conduct" to determine if they are directly comparable to the plaintiff in all material respects. **Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)**.

Applying this modified prima facie test, the Court finds that Jackson cannot establish that IDHS treated similarly situated female employees better. In support of his sex discrimination claim, Jackson relies on circumstances surrounding six female employees, who he claims are similarly situated: Cheryl Bradshaw, Pat Smith, Beth Schlenker, Sandy Willams, Jackie Leeper, and Julie Yana. However, the record before the Court indicates that none of these women engaged in conduct similar to Jackson, and all of them appear to be employed in different capacities than Jackson.

Julie Yana's conduct is easily distinguishable from Jackson's conduct. Yana was investigated and disciplined for putting up a sign that was critical of investigator Tweedy. Since Yana's conduct is completely different from Jackson's case, the circumstances surrounding her punishment do not provide support for Jackson's position.

Jackson next contends that Bradshaw, Williams, and Leeper[1] had inappropriate relationships with patients and were not disciplined. Jackson, however, acknowledges that none of these women lied to the investigator and that the claims against them were found to be unsubstantiated. Moreover, even where the women did engage in relationships with former patients, none of the relationships were found to have begun while the patients were under Choate care (Doc. 24, Exh. I, Moorman Depo. at 28-30, 40 & 45-46; Doc. 24, Exh. A, Jackson Depo. at 61-62). In contrast, Tweedy's investigation revealed that Jackson kissed T.L. while she was still a patient, and then lied about the nature of their relationship while the OIG investigation was underway. Therefore, these women's conduct differs sharply from Jackson's, such that none of them appear to be similarly situated.

Jackson next points to Schlenker, a supervisor over the Mental Health Techs, and Smith, a Unit Administrator who supervised Schlenker. These women were punished for taking patients to a casino and permitting them to drink alcohol (Doc. 24, Exh. I, Moorman Depo. at 37-39). Schlenker received a thirty-day suspension, and Smith received a five-day suspension and a demotion (Doc. 24, Exh. H, Moorman Depo. at 39). While such misconduct is obviously serious, neither woman was accused of having any sexual or romantic relationships with patients, and both women were seriously reprimanded and placed on probation. Jackson contends that there is evidence both women lied, but there were no indications, findings, or admissions of lying during the

---

[1] Jackson claims that Leeper did kiss a patient who was under Choate care. However, Jackson's allegation is based entirely on hearsay and speculation, and he is unaware of whether her supervisors ever knew of the allegation (Doc. 24, Exh. A, Jackson Depo. at 62-63). Leeper, on the other hand, denies that she kissed a patient under Choate care. Since Jackson has produced no admissible evidence to support this allegation, the Court cannot find that Leeper's conduct is sufficiently similar.

6

OIG investigation.

In addition to the fact that these women's conduct is not sufficiently similar to that of Jackson, none of them held the same position and responsibilities as he did. Jackson was a Medical Health Program Tech III. But Yana was a Security Therapy Aide, Schlenker was a Mental Health Techs Supervisor, Smith was a Unit Administrator, Williams was a Life Skills Coordinator, and Bradshaw and Leeper were designated as Mental Health Tech II. This Court cannot adequately determine the difference between these positions, as the parties have failed to fully explain the job responsibilities and qualifications for each. No specific information is provided as to what Jackson's duties as a Mental Health Program Tech III were, besides conducting "programs with the patients . . . on how . . . to deal with their illnesses" (Doc. 24, Exh. A, Jackson Depo. at 13). The only information in the record is that each position involved a different job title, and presumably, different responsibilities. It is Jackson's burden to show that these distinctions are minor, and that these women really were similarly situated with respect to him. But since Jackson had a different job title and seniority level than the women he references, the Court cannot necessarily assume that the qualifications and duties were comparable. Because he fails to provide any further information, Jackson cannot meet his burden of showing that his position was similar to those of other employees as to performance or qualifications.

In light of the fact that these women did not engage in sufficiently similar conduct, and none of them held the same position as Jackson, the Court finds that Jackson has failed to carry his burden of identifying any similarly situated female who was disparately punished.

The Court likewise finds that Jackson cannot establish that IDHS had any reason or inclination to discriminate against men, nor that there was anything "fishy" about the circumstances

surrounding his termination. Jackson first contends that Tweedy conducted a "sham" investigation in his case and only did a cursory analysis before finding that Jackson had engaged in misconduct. The evidence, however, fails to support this accusation. It is undisputed that Tweedy spoke with everyone involved, and Jackson himself admits that Tweedy was correct in finding that he lied during the course of the investigation (Doc. 24, Exh. G, Tweedy Depo. at 15-28). Such conduct, as well as that of kissing a patient, was in clear violation of the rules governing employee conduct (Doc. 31, Exh. T, Employee Handbook at 2, 3, & 7). In short, Jackson provides nothing other than his own disagreement with the investigator's findings to support his claim that it was a "sham."

Jackson's other arguments that IDHS discriminates against men are similarly unavailing. He argues that IDHS's gender discrimination is evident because, after he was terminated, IDHS filled his position with a woman. However, the mere fact that he was replaced by a woman after he was fired does not, in and of itself, establish that IDHS had any discriminatory intent. Further, Jackson admits that while he was employed at Choate, he was promoted over other female candidates based on his seniority, qualifications, and experience (Doc. 24, Exh. A, Jackson Depo. at 19). This obviously undermines his claim that IDHS discriminates against men.

Additionally, Jackson claims that other men were treated better than he was, including Cary Quick, Chase Garner, and Clyde Ramage.[2] This Court finds it difficult to believe that an institution is prone to discriminate against men when Jackson himself produces evidence that both men and women were treated better than he was.

Having considered all of the parties' arguments and the information provided in the

---

[2] While Jackson references these male employees with respect to his ADA claim, this Court sees no reason why it should not consider the record as a whole in determining whether IDHS has shown an inclination to discriminate against men.

record, the Court finds that Jackson cannot meet his burden of establishing a prima facie case of sex discrimination. As no genuine issue of material fact remains as to Jackson's Title VII claim, summary judgment must be entered in favor of IDHS and against Jackson.

### 2. Jackson's Remaining Claims

Though not entirely clear from Jackson's response, it appears that he has abandoned both his ADA claim and his retaliatory discharge claim. Indeed, he states: "Plaintiff hereby elects to stand on his Title VII claim of sex discrimination and submits no response to Defendant's Motion with respect to his ADA and retaliatory discharge claims" (Doc. 31 at 16). As noted above, Jackson must respond to the summary judgment motion with specific facts supporting his claims. *See* **FED.R.CIV.P. 56(e) ("an opposing party may not rely merely on allegations or denials in its own pleading")**. The fact that Jackson has failed to submit any response to IDHS's motion for summary judgment with respect to the ADA and retaliatory discharge claims appears to represent his admission that summary judgment is appropriate.

In any case, Jackson's silence is telling, as neither claim is supported by evidence in the record. Accordingly, Jackson's ADA and retaliatory discharge claims must be dismissed.

#### a. Jackson's ADA Claim (Count 2)

Under the Americans with Disabilities Act, **42 U.S.C. § 12112(a)**, it is illegal for an employer to discriminate against an employee because of a disability. Under the ADA, a disability exists where the plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, there is a record of such an impairment, or the plaintiff is regarded as

having such an impairment. **42 U.S.C. §12102(1)**.[3] A party proceeding under the ADA must show either a failure to accommodate or, as Jackson alleges, disparate treatment due to the disability. ***Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)**.

Just as in a Title VII claim for sex discrimination, a plaintiff can prove disparate treatment through either the direct or indirect method under the *McDonnell Douglas* burden shifting scheme. ***Lloyd v. Swifty Transp. Inc.*, 552 F.3d 594, 601 (7th Cir. 2008)**. To establish a prima facie case for discrimination, a plaintiff must show that: (1) he is disabled under the meaning of the ADA; (2) that he was meeting the employer's legitimate employment expectations; (3) that he suffered an adverse employment action; and (4) similarly situated employees were treated better than the plaintiff. *Id*. If a plaintiff establishes his prima facie case, the burden then shifts to the employer to provide a noninvidious reason for the firing. *Id.* And if this is accomplished, the burden shifts back to the plaintiff to show that the employer's reasons are pretexual. ***Id.***

Even if this Court assumes that Jackson is disabled within the meaning of the statute, summary judgment is still appropriate due to the same reasons Jackson's Title VII claim fails. First, as explained above, Jackson has failed to provide any evidence of similarly situated employees that were treated more favorably. None of the male employees identified by Jackson—Garner, Quick, and Ramage—were charged with conduct similar to Jackson.[4] While Jackson argues that Garner

---

[3] It should be noted that subsequent to the filing of this action, Congress expanded the meaning of "disability" under the ADA. Since this action was commenced prior to these changes, this Court will follow the pre-amended version.

[4] Jackson offers no evidence, other than hearsay, as to allegations surrounding either Quick or Ramage. Jackson claims that Ramage brought a gun onto the premises, threatened to shoot himself, and had to be subdued. He also claims that Quick lied to security about a sign he made about Tweedy (Doc. 24, Exh. A, Jackson Depo. at 72-75). However, it does not appear that this conduct is sufficiently similar to that for which Jackson was punished. And in any case,

lied about entering a patient's room, there is no evidence that he or any of the other identified employees kissed or had an improper relationship with a patient. Additionally, none of the male employees held the same position as Jackson. Both Quick and Garner held the Mental Health Tech II position and Ramage was a Head Security Officer. As explained above, without sufficient information as to the differences between Jackson's position and the other Mental Health Tech positions, this Court cannot find that these individuals' work responsibilities have sufficiently similar. Again, Jackson has failed to meet his burden of showing that a similarly situated employee received more favorable treatment.

Finally, Jackson all but admits that he was not meeting IDHS's employment expectations. The OIG investigator found that Jackson kissed a patient while she was still under the care of Choate. Jackson himself admits that he lied about their relationship and obstructed the investigation. Such behavior goes against the standards and directives of IDHS's employee handbook.

Consequently, the Court finds that Jackson failed to meet his burden of establishing that similarly situated individuals were treated better. As no genuine issue of material fact remains as to Jackson's ADA claim, summary judgment must be entered in favor of IDHS and against Jackson.

### b. Jackson's Retaliatory Discharge Claim (Count 5)

Finally, Jackson makes no attempt to rebut IDHS's argument that his retaliatory discharge claim is barred by the doctrine of sovereign immunity. The Eleventh Amendment

---

without admissible evidence, the Court cannot find that a genuine issue of material fact exists as to whether Jackson and these men are similarly situated.

recognizes that each State is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Hans v. Louisiana*, **134 U.S. 1, 13 (1890).** By its express terms, the Eleventh Amendment bars federal courts from hearing suits against a State brought by citizens of any other State. **U.S. CONST. AMEND. XI.**[5] Additionally, the United States Supreme Court has consistently held that unconsenting States are immune from suits brought in federal court by their own citizens as well as those brought by citizens of other states. *Ameritech Corp. v. McCann*, **297 F.3d 583, 585 (7th Cir. 2002) (citing** *Edelman v. Jordan*, **415 U.S. 651, 662-63 (1974)).** Eleventh Amendment immunity also protects state agencies and state officials from such actions. *See Seminole Tribe of Florida v. Florida*, **517 U.S. 44, 73-76 (1996);** *Kentucky v. Graham*, **473 U.S. 159, 169 (1985);** *Pennhurst State School & Hosp. v. Halderman*, **465 U.S. 89, 100 (1984).** *See also Illinois Assoc. of Mortgage Brokers v. Office of Banks and Real Estate*, **308 F.3d 762, 765-66 (7th Cir. 2002);** *Ryan v. Illinois Dep't of Children & Family Servs.,* **185 F.3d 751, 758 (7th Cir. 1999) (explaining that as an agency of the state, Illinois Department of Children & Family Services was entitled to Eleventh Amendment immunity against § 1983 claims).**

There are narrow circumstances in which a suit can proceed against a State, its agencies, or officials. For instance, a State can waive the protections of the Eleventh Amendment and consent to be sued in federal court. *Ameritech*, **297 F.3d at 585.** Additionally, the United States Congress can use its enforcement powers under the Fourteenth Amendment to abrogate a State's Eleventh Amendment immunity. *Id.*

---

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The first exception is not applicable in this case, as Jackson has not pointed to any statute whereby the State waived its sovereign immunity with respect to this particular claim. Nor is the second exception available to Jackson, since he fails to identify any instance in which Congress has abrogated the State's sovereign immunity. As such, it appears that this Court is barred from presiding over Jackson's retaliatory discharge claim.

Accordingly, the Court must enter summary judgment in favor of IDHS as to Jackson's retaliatory discharge claim.

### D. Conclusion

For the reasons thoroughly explained above, this Court finds that Jackson has failed to identify any genuine issues of material fact. Additionally, the State appears to enjoy sovereign immunity under the Eleventh Amendment with respect to Jackson's retaliatory discharge claim. Accordingly, the Court hereby **GRANTS** the Defendant's motion for summary judgment (Doc. 23), and **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendant and against Plaintiff.

As no pending claims remain, this case is hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**

**DATED this 20th day of March 2009.**

                                                **s/ Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**